UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOHNNY V. WILLIAMS,

and

GAIL E. WILLIAMS,

      Plaintiffs,

   v.

CIVIL ACTION NO. 2:07cv66

EQUITY HOLDING CORPORATION,
Individually and as Trustee,
a California Non-Profit Corporation,
et al.,

      Defendants.

FILED

AUG - 3 2007

CLERK U.S. DISTRICT COURT

## OPINION

Plaintiffs, Johnny V. Williams and Gail E. Williams (the "Williams"), filed their complaint in this case on November 30, 2006, against defendants, Equity Holding Corporation ("EHC"), Thomas K. Standen ("Standen"), American Home Quest, LLC ("AHQ"), LandPartners of America, Inc. ("LandPartners"), Adastra Realty Fund Limited ("Adastra"), and North American Realty Services, Inc. ("NARS") (collectively, "defendants"). The Williams amended their complaint on December 16, 2006. The Williams allege the following eleven claims: rescission based upon violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 (Count One); damages based upon a violation of TILA (Count Two);

violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 (Count Three); violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Count Four); breach of contract (Count Five); common law fraud (Count Six); unconscionability (Count Seven); violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (Count Eight); violation of the Virginia Business Trust Act ("VBTA"), VA. CODE ANN. § 13.1-1200 et seq. (Count Nine); violation of the Mortgage Lender and Broker Act ("MLBA"), VA. CODE ANN. § 6.1-408 et seq. (Count Ten); and violation of the Virginia Consumer Protection Act ("VCPA"), VA. CODE ANN. § 59.1-196 et seq. (Count Eleven).[1]   Presently before the court is defendants' motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).   More specifically, all six defendants move to dismiss Counts Five (breach of contract) and Eight (RICO), and EHC moves to dismiss Counts Nine (VBTA) and Ten (MLBA).   For the reasons set forth below, defendants' motion to dismiss is **GRANTED.**

## I. Factual and Procedural History

On or about November 15, 2005, the Williams were in arrears on their mortgage with Homecomings Financial ("Homecomings") in the

_____

[1] The Williams filed these counts against each defendant, except for Counts Four (FDCPA), Nine (VBTA), and Ten (VMLBA). Count Four (FDCPA) was only filed against EHC, Standen, AHQ, and LandPartners, and Counts Nine (VBTA) and Ten (MLBA) were only filed against EHC.

2

amount of $59,415.97 for their property located at 100 Whimbrel Drive, in Suffolk, Virginia.[2] As a result, Homecomings sent the Williams a notice of default and scheduled a foreclosure sale for December 6, 2005. On the same day as receiving this notice, the Williams heard a radio advertisement for a company identified as Mortgage Star that said "call if you have credit problems or want to refinance your home." The Williams responded to this advertisement and spoke to an individual named Valerie Morrison ("Morrison"). During this telephone conversation, the Williams informed Morrison that their home was going into foreclosure. In response, Morrison advised them that Mortgage Star could help them save their home.

On November 16, 2005, the day after this initial telephone conversation, the Williams traveled to the office of Mortgage Star and met with Morrison. Believing that they were to obtain a second mortgage on their property, the Williams brought an appraisal and payoff/reinstatement information regarding their mortgage with Homecomings.[3] At this meeting, Morrison told the Williams that their credit problems meant nothing and that Mortgage Star's determination of loan eligibility was based solely on the amount of equity available in their property. The Williams asked Morrison

---

[2] This property is the Williams's residence.

[3] At this time, according to the Williams, the appraised value of their home was $555,000.00, and the outstanding mortgage was approximately $385,237.20.

how much they would be required to repay on the loan, and Morrison responded that it would be approximately $75,000.00. Morrison, however, later advised the Williams that the repayment amount would be higher. At no point did Morrison ever inform the Williams of the interest rate that they would be required to pay for borrowing the funds nor did she advise them that they would have to deed their home into a trust to secure the transaction.

Late in the afternoon on December 5, 2005, the day before the foreclosure sale was to take place, the Williams received a telephone call from Morrison advising them that they needed to sign a number of documents before a notary and have them returned to her by close of business. Having little time to comply with Morrison's instructions, the Williams picked up the document package from Mortgage Star, went to their bank, signed the documents before a notary, and returned them. Although the Williams believed that they had signed documents to obtain a second mortgage, they had actually transferred ownership of their home into a land trust and became tenants for a period of one year through an occupancy agreement.[4] At this time, the Williams did not see any document

---

[4] Essentially, the Williams and defendants, through these fully-executed documents, created a sophisticated NARS Equity Trust in the name of the Johnny V. Williams Trust, whereby the Williams deeded their property into a land trust, designated EHC as trustee and manager, and named themselves as beneficiaries. Additionally, however, the Williams designated AHQ, Adastra, and LandPartners as investor beneficiaries.

4

entitled Deed of Bargain in the document package.[5]  After returning these documents to Morrison, the Williams requested copies of the document package, but Morrison refused.  In addition, the Williams repeatedly asked David Thurmond ("Thurmond") of AHQ for copies of the document package, but he also refused.  The Williams were finally provided these copies in April 2006; however, even at this time, a copy of the Deed of Bargain was not included.

After signing these documents, the Williams repeatedly demanded repayment information on the loan from Thurmond.  The Williams believed that they needed such information to arrange financing for the loan, which they thought to be due on December 1, 2006.  In response to these inquiries, Thurmond gave the Williams a variety of repayment figures that increased over time.  Specifically, Thurmond told the Williams that the payoff amount was $120,000.00 in February 2006, $140,000.00 in June 2006, and $160,000.00 in September 2006.  At the end of each conversation, Thurmond told the Williams that he would provide them with written documentation of the payoff figures, but he never furnished them with this information.  From December 2005 to October 2006, the Williams believed that they were the owners of the property.  In October 2006, the Williams finally learned that they were not the owners of the property and that no refinancing was possible.

---

[5] The Williams claim that only the signature page of the Deed of Bargain was included in the document package.

5

The Williams filed their complaint on November 30, 2006,[6] and amended complaint on December 13, 2006, in the Richmond Division of this court.  Defendants filed an answer to the Williams's amended complaint on December 29, 2006.  In their answer, defendants specifically raised the defense that the Williams failed to state a claim upon which relief can be granted for Counts Five, Eight, Nine, and Ten.  On February 9, 2007, upon motion of defendants, this case was transferred to the Norfolk Division of this court. Thereafter, on May 2, 2007, defendants filed the instant motion to dismiss, with a memorandum in support.  After receiving a short extension of time, the Williams filed their response on June 6, 2007.  Defendants replied on June 20, 2007.  Accordingly, this matter is now ripe for review.

## II. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move the court to dismiss a claim for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint; importantly, this motion "'does not resolve contests surrounding the facts, the merits of a claim, or the

---

[6] On this same day, the Williams filed a motion for a temporary restraining order, which the court granted. As a result, defendants were enjoined from foreclosing on the Williams's property. The court extended this temporary restraining order on December 4, 2006, and then entered a stipulated preliminary injunction order on December 12, 2006, with the same terms, which currently remains in effect.

applicability of defenses.'" <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999) (quoting <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)). When reviewing a claim pursuant to a Rule 12(b)(6) motion, the court must accept well-pleaded allegations as true and construe the factual allegations in favor of the plaintiff. <u>Randall v. United States</u>, 30 F.3d 518, 522 (4th Cir. 1994). Furthermore, the Supreme Court has recently provided the instruction that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (internal quotations and citations omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 1965 (internal citation omitted). Thus, a Rule 12(b)(6) motion should be granted unless the factual allegations in the plaintiff's complaint are sufficient to raise a "'reasonably founded hope'" that the plaintiff will be able to make a case. <u>See</u> <u>id.</u> at 1969 (quoting <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 347

(2005)).[7]   A plaintiff "'must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist.'"   Schlegel v. Bank of Am., N.A., Civil Action No. 3:07cv221, 2007 WL 1704208, at *2 (W.D. Va. June 12, 2007) (quoting Jordan v. Alternative Res. Corp., 458 F.3d 332, 344-45 (4th Cir. 2006)).

Additionally, Rule 12(b) provides that when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b).

> Generally, then, when documents which were not appended to the Complaint are submitted to the court in connection with a Motion to Dismiss pursuant to Rule 12(b)(6), those documents either are not considered or the motion is converted to a summary judgment motion with proper notice

---

[7] The Williams rely on language from Conley v. Gibson in arguing that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); see Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss at 4.   However, the Supreme Court expressly abrogated the "no set of facts" language from Rule 12(b)(6) jurisprudence when it stated that this language in Conley had "been questioned, criticized, and explained away long enough" and had thus "earned its retirement." Twombly, 127 S. Ct. at 1969. The Court further stated that this language is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Id.   The Court described Conley as simply describing the "breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Id. at 1968-69. Thus, this court relies upon Twombly, and not the Conley language, for the correct pleading standard.

to the parties.  <u>An exception to the general rule is made</u>
<u>for documents which are referred to in the Complaint and</u>
<u>upon which Plaintiff relies in bringing the action</u>.  That
exception has been recognized with favor and relied upon
in [the Fourth C]ircuit.

<u>Biospherics, Inc. v. Forbes, Inc.</u>, 989 F. Supp. 748, 749 (D. Md.

1997) (emphasis added).  Both the Williams and defendants have

appended to their pleadings various documents, which make up the

document package that the Williams signed and returned to Morrison

on December 5, 2005.  Accordingly, seeing that the parties have

raised no objection to these appended documents, the court will

consider them in ruling on the motion to dismiss.[8]

### III. Analysis

### A. Timeliness of Defendants' Rule 12(b)(6) Motion

The Williams initially contend that defendants' Rule 12(b)(6)

motion is untimely and thus should be denied.  In support, the

Williams allege that defendants were required to file a "Memorandum

---

[8] However, the Williams also attached to their response to
defendants' motion an affidavit from the Williams's current
counsel, a transcript of deposition testimony of Morrison, and an
article discussing the general concept of the NARS Equity Trust.
<u>See</u> Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, Exs. 8-10.  The
court finds that these exhibits and any discussion of them contain
alleged facts outside of the pleadings, which are improper and
should not be considered under Rule 12(b)(6).  Moreover, if the
Williams wish to rely upon an affidavit from their current counsel,
such counsel would generally have to withdraw from the case,
because counsel cannot also serve as a witness for a client,
especially when other witnesses are able to supply the information.
<u>See, e.g.</u>, <u>United States v. Fogel</u>, 901 F.2d 23, 26 (4th Cir. 1990).
Furthermore, if the Williams want to rely upon the article
discussing the NARS Equity Trust, they would need to authenticate
the article.

in Support" of defendants' current motion to dismiss at the time defendants filed their answer and affirmative defenses to the Williams's amended complaint. This court finds, as defendants argue in their reply, that this argument is without merit.

Rule 12(b) provides that "[e]very defense, in law or fact, to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b). It further provides that a motion making this defense "shall be made before pleading if a further pleading is permitted." Id. Thus, in order to be timely, a defendant should assert the defense of failure to state a claim before the close of the pleadings.

In this case, defendants did timely assert their defense of failure to state a claim before the close of the pleadings. On December 29, 2006, in compliance with Rule 12(b)(6), defendants timely filed their answer and affirmative defenses to the Williams's amended complaint. In their answer, defendants expressly asserted the defense of failure to state a claim for each count at issue in defendants' motion. As a result, defendants preserved their right to file a separate motion to dismiss for failure to state a claim at a later date, which they ultimately did. See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d

10

123, 126 & n.5 (2d Cir. 2001); Simmons v. Justice, 196 F.R.D. 296, 297 (W.D.N.C. 2000).   Accordingly, pursuant to Rule 12(b)(6), defendants' motion to dismiss for failure to state a claim is timely.

However, even assuming arguendo that defendants' motion is untimely, which it is not, Rule 12(h)(2) and precedent in this circuit clearly instruct consideration of this defense, as it is not subject to waiver.   See Simmons, 196 F.R.D. at 297.   Rule 12(h)(2) provides that the defense "as set forth in Rule 12(b)(6) may be raised 'by motion for judgment on the pleadings [under Rule 12(c)], or at trial on the merits.'"   Johnson v. Brown, 372 F. Supp. 2d 501, 503-04 (E.D. Va. 2005) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)); see Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).  A Rule 12(c) motion to dismiss for failure to state a claim is governed by the same standard applied to a Rule 12(b)(6) motion. Johnson, 372 F. Supp. 2d at 504.   Thus, as the Fourth Circuit has noted, this distinction is "one without a difference."   Burbach Broad., 278 F.3d at 405.   Thus, even if defendants' motion to dismiss for failure to state a claim was untimely, this court would simply construe the motion under Rule 12(c) and decide it under the same standard as Rule 12(b)(6).

## B. Count Five (Breach of Contract)

The Williams originally asserted Count Five (Breach of

11

Contract) against each defendant, but when confronted with defendants' motion to dismiss for failure to state a claim, they have subsequently stipulated to its dismissal. The Williams earlier alleged that they had an oral agreement with defendants, whereby defendants had agreed to provide a loan to cure the $59,415.97 arrearage on the Williams's property, to be secured by a second deed of trust. Am. Compl. ¶ 79. The Williams claimed that defendants breached this agreement when they failed to provide the loan. Defendants, however, argued that this claim should be dismissed because the oral agreement violated Virginia's statute of frauds. See VA. CODE ANN. § 11-2(9); Charles E. Brauer Co. v. NationsBank of Virginia, 251 Va. 28, 34, 466 S.E.2d 382, 385 (1996). In their response to this argument, the Williams acknowledged that they faced an "uphill battle" on this count and stipulated to its dismissal. See Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss at 1. Accordingly, this court **GRANTS** defendants' motion to dismiss Count Five (Breach of Contract).

### C. Count Eight (RICO)

Defendants move this court to dismiss Count Eight (RICO) for failure to state a claim, arguing that the Williams have not sufficiently alleged many of the required elements. "To test the legal sufficiency of [this claim], the court must begin with an outline of RICO's requirements for recovery." D'Addario v. Geller, 264 F. Supp. 2d 367, 396 (E.D. Va. 2003). The Williams claim that

defendants violated 18 U.S.C. § 1962(a), (c), and (d).[9]  "Common to
these provisions are the elements of a (1) person, (2) an
enterprise, (3) a pattern of (4) racketeering activity (5) which
causes injury to the plaintiff." Myers v. Finkle, 758 F. Supp.
1102, 1111 (E.D. Va. 1990). "The injury and causation components
[of element (5)] are viewed as standing requirements." D'Addario,
264 F. Supp. 2d at 396. Defendants do not dispute the enterprise
or the injury and causation components, but they do contend that
the Williams have not sufficiently alleged elements (1), (3),
or (4).

### 1. Person

"[T]he object of all civil RICO actions is the RICO 'person',
the defendant." George v. Blue Diamond Petro., Inc., 718 F. Supp.
539, 544 (W.D. La. 1989). "'Person' is defined broadly as 'any

---

[9] RICO, in relevant part, renders

> civilly liable "any person" who uses or invests income
> derived "from a pattern of racketeering activity" to
> acquire an interest in or to operate an enterprise
> engaged in interstate commerce, § 1962(a); . . . who,
> being employed by or associated with such an enterprise,
> conducts or participates in the conduct of its affairs
> "through a pattern of racketeering activity," § 1962(c);
> or, finally, who conspires to violate the first three
> subsections of § 1962, § 1962(d).

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 232 (1989);
see Neild v. Wolfpoff & Abramson, L.L.P., 453 F. Supp. 2d 918, 925
(E.D. Va. 2006). Notably, "RICO provides for drastic remedies:
. . . . a person found in a private civil action to have violated
RICO is liable for treble damages, costs, and attorney's fees, 18
U.S.C. § 1964(c)." H.J. Inc., 492 U.S. at 233.

individual or entity capable of holding a legal or beneficial interest in property.'" Id. at 545 (quoting 18 U.S.C. § 1961(3)). Notwithstanding this broad definition, defendants contend that the Williams have not sufficiently identified each "person" in their amended complaint and instead improperly "collectivized" the defendants. In doing so, defendants rely solely on a passage from Myers, which states that "[c]ollectivizing 'defendants' in the alleged pattern of racketeering activity will not suffice." 758 F. Supp. at 1111. The Williams, on the other hand, factually differentiate Myers and argue that even though they "collectivized" defendants in the RICO section of their amended complaint, they had previously and separately identified each defendant and properly pled each defendant's role in establishing the land trust.

As to the "person" element, the court finds the Williams's argument to be more persuasive. In Myers, the court found that a lack of specificity as to the "person" element rendered the complaint defective. Id. at 1112. However, the Myers court was presented with a much different factual scenario and is thus distinguishable from the instant case. As the Myers court explained,

> [t]he defendants in this case are twelve named partners
> of Finkle & Co., twenty John Does, Finkle & Co. itself,
> and Exec Associates. The factual allegations of the
> Amended Complaint refer only to the activities of Stephen
> Wetter and Robert Finkle. Nowhere do the plaintiffs tie
> the activities of those two individuals to their partners
> or to Finkle & Co. The plaintiffs admit that "only
> Robert Finkle and Stephen Wetter dealt directly with the

14

> plaintiffs in the sale of the Harmon investments."
> Nevertheless, the RICO count in the Amended Complaint
> refers only to "Finkle," which is the plaintiffs'
> designation for Finkle & Co.

<u>Id.</u> at 1111 (internal citations omitted). Based upon these factual allegations, the court concluded that the plaintiffs had simply "collectivized" the defendants and not properly identified the role of each defendant as to the RICO count. <u>Id.</u> at 1112. Conversely, in the instant case, the Williams separately identified each defendant in their amended complaint, and through their factual allegations and the information contained in the document package, they sufficiently demonstrated how each defendant was integrally involved in establishing the Johnny V. Williams Trust, the subject of this civil action. Thus, there can be no serious doubt that defendants meet the "person" definition contained in 18 U.S.C. § 1961(3). Accordingly, this court finds that the Williams properly alleged the RICO "person" in their amended complaint.

## 2. Pattern of Racketeering Activity

The Williams are also required to prove that defendants engaged in a "'pattern of racketeering activity.'" <u>ePlus Tech., Inc. v. Aboud</u>, 313 F.3d 166, 181 (4th Cir. 2002) (quoting 18 U.S.C. § 1962). "Under RICO, 'racketeering activity' is defined as 'any act or threat' involving specified state law crimes, such as murder or bribery, or an 'act' indictable under various federal statutes, such as mail and wire fraud." <u>Id.</u> (quoting 18 U.S.C. § 1961(1)). To properly allege a pattern of such activity, "two or more

predicate acts of racketeering must have been committed within a ten year period." Id. (citing 18 U.S.C. § 1961(5)). Two acts are necessary, but not sufficient to establish such a pattern. D'Addario v. Geller, 264 F. Supp. 2d 367, 399 (E.D. Va. 2003). "These requirements are designed to prevent RICO's harsh sanctions, such as treble damages, from being applied to garden-variety fraud schemes." ePlus Tech., 313 F.3d at 181; see Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989) (stating that the pattern requirement "ensure[s] that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions"). This court and the Fourth Circuit have imposed a high threshold on what constitutes a properly pled pattern. See, e.g., Menasco, 886 F.2d at 683; Myers, 758 F. Supp. at 1113. Failure of a civil RICO claim to meet this threshold is fatal and warrants dismissal. Myers, 758 F. Supp. at 1102.

### a. Racketeering Activity

Here, the Williams's amended complaint states that defendants committed mail and wire fraud. See 18 U.S.C. §§ 1341, 1343. These two crimes qualify as "racketeering activity" under 18 U.S.C. § 1961(1)(B), but defendants argue that the Williams cannot state a claim for either predicate act. This court must thus determine whether the Williams have adequately pled that defendants engaged in the "racketeering activity" of mail and wire fraud.

"The federal mail and wire fraud statutes prohibit the use of

16

the mails or interstate wires in furtherance of schemes to defraud." <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 233 (4th Cir. 2004). "For the government to obtain a conviction for mail or wire fraud it must prove (1) a scheme disclosing an intent to defraud; and (2) the use, respectively, of the mails or interstate wires in furtherance of the scheme." <u>Id.</u>; <u>see United States v. ReBrook</u>, 58 F.3d 961, 966 (4th Cir. 1995). Moreover, when mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with particularity, pursuant to Rule 9(b). <u>See Scott v. WFS Fin., Inc.</u>, Civil Action No. 2:06cv349, 2007 WL 190237, at *5 (E.D. Va. Jan. 18, 2007) (citing <u>Menasco</u>, 886 F.2d at 684). "Rule 9(b) requires pleading the time, place, and content of the false representations, the person making them, and what that person gained from them." <u>Id.</u> (citing <u>Westinghouse v. Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999)). "However, '[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" <u>Id.</u>

Although this case presents a close call, based upon the Williams's amended complaint, this court finds that they have asserted enough particular factual allegations to put defendants on

notice of the circumstances for which they will have to prepare a defense.  Id.  The Williams broadly allege that defendants used the mails and interstate telephone system "in furtherance of said pattern of racketeering activity and collection of unlawful debt and to otherwise defraud plaintiffs." Am. Compl. ¶¶ 116, 117.  The Williams outlined the alleged scheme to defraud them of their home and pled a time frame for the scheme, specific persons, entities, and times connected with the fraud, and the general contents of the alleged fraudulent communications between defendants and the Williams.[10]   Thus, the Williams have fulfilled Rule 9(b)'s requirements as to the predicate acts of mail and wire fraud.

### b. Pattern

Although this court has determined that the Williams have satisfied the pleading standard for "racketeering activity," it must next evaluate whether they have sufficiently pled a "pattern of racketeering activity" through mail and wire fraud, a stringent requirement.  At a threshold level, the Fourth Circuit has stated that it is "especially cautious" in finding the existence of a pattern when the predicate acts involved in a RICO claim are mail and wire fraud, as "'[i]t will be the unusual fraud that does not

---

[10] The Williams allege that defendants mailed payment and collection information, collection letters (July 12, 2006, and August 3, 2006), and checks distributing proceeds of the transaction to them in furtherance of their scheme to defraud.  The Williams also allege that defendants made telephone calls soliciting business and refinancing and to arrange appointments to close loan.

enlist the mails and wires in its service at least twice.'" Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) (quoting Int'l Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 154-55 (4th Cir. 1987)). Nevertheless, it is possible to establish such a RICO pattern, but "'a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 181 (4th Cir. 2002) (citing HJ Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)). The Fourth Circuit has remarked that "[i]n essence, the pattern requirement has been reduced to a 'continuity plus relationship' test." Id. "[T]here is no mechanical formula to assess whether the pattern requirement has been satisfied; it is a commensensical, fact-specific inquiry." Id. at 182; Int'l Data Bank, 812 F.2d at 155 (stating that "[w]hat constitutes a RICO pattern is . . . a matter of criminal dimension and degree").

The Supreme Court and Fourth Circuit have thoroughly articulated the standard for the "continuity plus relationship" test. "For the predicate acts to be related, they must have 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and [not be] isolated events.'" ePlus Tech., 313 F.3d at 182 (quoting HJ Inc., 492 U.S. at 240). "The continuity aspect, in turn, refers 'either to a closed period

19

of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" Id. (quoting HJ Inc., 492 U.S. at 241). Predicate acts extending over a few weeks, months, or even one year, and threatening no future criminal conduct do not satisfy the continuity requirement, as Congress was only concerned with long-term criminal conduct. Id. This "inquiry's focus is on whether the related predicate acts indicate 'ongoing criminal activity of sufficient scope and persistence to pose a special threat to social well-being.'" Myers v. Finkle, 758 F. Supp. 1102, 1112 (E.D. Va. 1990) (quoting Int'l Data Bank, 812 F.2d at 155). Factors relevant to this inquiry include the number of and variety of predicate acts, the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries. See id. (citing Brandenburg v. Seidel, 859 F.2d 1179, 1185 (4th Cir. 1988)). "Thus, it is clear that predicate acts of racketeering activity must be part of a prolonged criminal endeavor." ePlus Tech., 313 F.3d at 182.

Based upon the factual allegations in their amended complaint, the Williams have failed to properly allege a RICO pattern with the specificity required under Rule 9(b). Specifically, the Williams failed to satisfy the continuity prong of the pattern test. First, while the Williams have alleged specific fraudulent acts directed towards themselves, their amended complaint lacks the specificity

20

required as to other victims. The Williams's amended complaint includes nothing more than conclusory, unsupported assertions that defendants are engaged in a widespread scheme to defraud other individuals in the same manner that they were allegedly defrauded. See Am. Compl. ¶¶ 112, 113(d).[11] The Williams point to no specific fraudulent conduct perpetrated by any defendant apart from that directed towards them from November 15, 2005, to November 30, 2006. Additionally, defendants have not alleged "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." Under an expansive reading of their amended complaint, the Williams only specifically allege approximately three acts of mail fraud, see Am. Compl. ¶¶ 57-59, 116, and approximately one act of wire fraud, see Am. Compl. ¶¶ 17, 117,

---

[11] The Williams only reference other victims twice in their amended complaint. The Williams first state that defendants "served as an umbrella for the activities of the various defendants who sought to obtain profits from Plaintiffs and others through fraud, and other illegal conduct." Am. Compl. ¶ 112. The Williams also state that defendants made fraudulent misrepresentations "to [p]laintiffs and others" regarding the "terms of various loan transactions for the purpose of concealing the disadvantageous nature of the transactions." Am. Compl. ¶ 113(d). However, the Williams provide no other allegations regarding other victims that this court can consider.

As noted earlier, in their response to defendants' motion to dismiss, the Williams attempted to furnish this court with such proof through an affidavit from their counsel, a transcript of deposition testimony of Morrison, and an article discussing the concept of the NARS Equity Trust. See supra note 8 (citing Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, Exs. 8-10). This court does not consider this information, however, as it was not referenced in the amended complaint and presents information outside of the amended complaint. See id.

both of which took place over the limited period of one year and were directed towards the single purpose of defrauding the Williams.  Moreover, the Williams have failed to allege that a sufficient threat of continued criminal activity existed, multiple schemes were present, or multiple distinct injuries resulted.  In sum, the Williams have essentially alleged ordinary commercial fraud, which is insufficient to establish a RICO claim.  See, e.g., ePlus Tech., 313 F.3d at 181.  Accordingly, this court **GRANTS** defendants' motion to dismiss Count Eight (RICO).[12]

### D. Count Nine (VBTA)

EHC, the Trustee of the Johnny V. Williams Trust, against whom Count Nine (VBTA) is asserted, moves to dismiss the count for failure to state a claim, arguing that the Williams failed to properly allege or establish that the trust qualifies as a "domestic business trust" or "foreign business trust" under the VBTA.  See VA. CODE ANN. § 13.1-1201.  Thus, EHC contends that the trust should not be considered a business trust and that it is thus not subject to the provisions of the VBTA.

The VBTA governs domestic and foreign business trusts in

---

[12] The Williams moved this court for leave to amend their amended complaint as to Count Eight.  While the court notes that such an amendment may be futile, the court **GRANTS** defendants' motion for leave to amend Count Eight and allows defendants fourteen days from the date of this Opinion to amend this claim. The court also notes that while this may be a late amendment, it does not prejudice defendants, since Count Eight has been in the case since December 16, 2006, the date the Williams filed their amended complaint, and discovery has proceeded upon it.

Virginia.   In their amended complaint, the Williams claim that EHC violated numerous provisions of the VBTA.   Am. Compl. ¶ 124. Specifically, the Williams allege that EHC failed to satisfy certain filing and registration requirements and that the trust transacted business as a business trust in Virginia without authorization.   Id.   As a result, the Williams claim that EHC is liable for a civil penalty, pursuant to section 13.1-1247(C) of the Virginia Code.   Am. Compl. ¶ 125.   This section specifically provides that

> [i]f a <u>foreign business trust</u> transacts business in this Commonwealth without a certificate of registration, each trustee, officer or employee of the business trust who does any such business in this Commonwealth knowing that a certificate of authority is required and has not been obtained shall be liable for a civil penalty of not less than $500 and not more than $5,000, which may be imposed by the Commission or by any court in the Commonwealth before which an action against the business trust may lie.

VA. CODE ANN. § 13.1-1247(C) (emphasis added).   A survey of state and federal case law in Virginia reveals no cases that have dealt with the VBTA or this civil penalty provision.   At a threshold level, however, this provision, by its own terms, appears only to apply to foreign business trusts.   Because the Williams concede that the Johnny V. Williams Trust does not qualify as a "foreign business trust," <u>see</u> Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss at 14, it appears that the VBTA claim must fail.

Nonetheless, even assuming that this provision also applies to a "domestic business trust," EHC argues that the Williams failed to

allege or establish that the Johnny V. Williams Trust constitutes such a trust.  It is well-settled that "a business trust is more than simply a trust that carries on business."  _See, e.g.,_ _In re Morgantown Trust No. 1_, 155 B.R. 137, 144 (Bankr. N.D. W.Va. 1993) (internal quotations and citation omitted).  Instead, to determine whether a trust qualifies as a "business trust," courts must focus on the statutory requirements, trust documents, and totality of the circumstances.  _See_ _id._ at 141, 144.

This court first turns to evaluate Virginia's statutory requirements for creating a business trust.  Under the VBTA, a "business trust" or "domestic business trust" is defined as an

uncorporated business, trust, or association that:

A. Is governed by a governing instrument under which:

> 1. Property is or will be held, managed, administered, controlled, invested, reinvested, or operated by a trustee for the benefit of persons as are or may become entitled to a beneficial interest in the trust property; or

> 2. Business or professional activities for profit are carried on or will be carried on by one or more trustees for the benefit of persons as are or may become entitled to a beneficial interest in the trust property; and

B. Files articles of trust under § 13.1-1212.

VA. CODE ANN. § 13.1-1201.  As EHC argues, the Johnny V. Williams Trust does not qualify as a "business trust" under the VBTA. First, the trust property is not "managed, administered, controlled, invested, reinvested or operated" by EHC.  Rather, the

plain language of the Trust Agreement provides that the beneficiaries, not the Trustee, shall have "the management of the Trust Property, and control of the purchasing, renting, handling, maintenance, encumbering, selling, or making of any other disposition of the Trust Property." Def.'s Br. in Supp. of Mot. to Dismiss, Ex. B.  Likewise, the Trust Agreement further states that "[t]he Trustee shall not be called upon to do anything with respect to the management or control of the Trust Property, the payment of taxes or assessments, insurance, litigation, or otherwise, except on written direction of the Beneficiaries as provided in this Agreement . . . ."  Id.  Second, EHC has never filed articles of trust under the VBTA for the Johnny V. Williams Trust.  As a result, the Johnny V. Williams Trust does not meet the statutory requirements for a "business trust" under the VBTA.

Additionally, the trust documents and totality of the circumstances support the conclusion that the Johnny V. Williams Trust is not a "business trust."  The following eight factors assist in making such a determination: (1) the trust instrument's language indicated that the trust was not intended to be a "business trust"; (2) the trust was not "created to transact business for the benefit of investors"; (3) the beneficiaries had "significant management and control of the trust, and the trustee/beneficiary relationship" resembled that of agent/principle; (4) there was no evidence of any attempt to comply

25

with the state law recording requirements for business trusts; (5) the trust had no employees or business office; (6) the initial funding of the trust was by a conveyance of real property, rather than by pooling resources of investors or beneficiaries or by selling shares; (7) the trust was not created for the purpose of carrying on the winding-up of affairs of a predecessor business; and (8) the trust appeared to be a land trust. See In re Morgantown Trust No. 1, 155 B.R. at 144-45. In the instant case, after considering the facts and the trust documents, this court finds that the above factors are present. See Def.'s Br. in Supp. of Mot. to Dismiss, Ex. B. Accordingly, the Williams did not properly allege that the Johnny V. Williams Trust was a business trust, and, importantly, based upon the trust's express terms and totality of the circumstances, this court finds that in substance the trust is not a business trust. Thus, this court **GRANTS** EHC's motion to dismiss Count Nine.[13]

### E. Count Ten (MLBA)

EHC, against whom Count Ten (MLBA) is asserted, moves to dismiss the count for failure to state a claim, arguing that the Williams failed to properly allege or establish that it qualifies

---

[13] The Williams moved this court for leave to amend their amended complaint as to Count Nine. However, the Williams have already amended their complaint once and, more importantly, any amendment would be futile under the court's ruling, as the facts and the trust documents cannot change in this regard. Accordingly, this court **DENIES** the Williams's motion for leave to amend Count Nine.

as a "mortgage lender" or "mortgage broker" under the MLBA. See VA. CODE ANN. § 6.1-409. As a result, EHC contends that it is not subject to the provisions of the MLBA. In their response to EHC's motion, the Williams concede that EHC is not subject to the MLBA. See Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss at 18. Instead, the Williams now contend that AHQ, Adastra, and LandPartners are the proper defendants to be charged under this claim and have thus moved this court for leave to amend their complaint in this regard. Id. This court, however, **DENIES** the Williams's motion as any amendment would be futile.

While the MLBA creates a regulatory scheme that governs mortgage lenders and brokers in Virginia, it does not create a private cause of action. Specifically, the Williams allege that EHC violated numerous provisions of the MLBA and ask for damages and attorney's fees under section 6.1-431 of the Virginia Code. This section, however, states as follows:

> Nothing in this article shall be construed to preclude any individual or entity who suffers loss as a result of a violation of Articles 3 (§ 6.1-330.53 et seq.) through 12 (§ 6.1-330.80 et seq.) of Chapter 7.3 of this title from maintaining an action to recover damages or restitution and, as provided by statute, attorney's fees. However, in any matter in which the Attorney General has exercised his authority pursuant to § 6.1-430, an individual action shall not be maintainable if the individual has received damages or restitution pursuant to § 6.1-430.

VA. CODE ANN. § 6.1-431. By its express terms, this section does not create a private cause of action under the MLBA; instead, it

provides that the MLBA does not preclude any individual who suffers a loss as a result of violations of sections 6.1-330.53-.80 of the Virginia Code,[14] which is a separate statute from the MLBA, from bringing a private action to recover for damages under these sections.[15]  However, the MLBA prevents the possibility of dual recovery in providing that if an individual receives damages or restitution due to the Attorney General's exercise of authority pursuant to section 6.1-430 of the Code of Virginia, then the individual cannot also recover in a private cause of action for the same violations.  Accordingly, this court **GRANTS** EHC's motion to dismiss Count Ten.[16]

## IV. Conclusion

For the reasons stated above, defendants' motion to dismiss Counts Five (Breach of Contract), Eight (RICO), Nine (VBTA), and Ten (MLBA) is **GRANTED**, the Williams's motion for leave to amend Count Eight is **GRANTED**, and the Williams's motions for leave to amend Counts Nine and Ten are **DENIED**.  As a result, Counts One

---

[14] These statutory sections are part of Chapter 7.3 (Money and Interest) of Title 6.1 of the Code of Virginia.  These provisions are separate from those of the MLBA and deal with legal and judgment interest rates; contract interest rates and exceptions thereto; usury and penalties; late charges, prepayments and acceleration laws; and rights of borrowers and consumers.

[15] See supra note 14.

[16] Because this court dismisses Count Ten on the ground that no private cause of action exists under the MLBA, it need not determine at this juncture whether the transaction at issue is a loan.

(rescission - TILA and HOEPA), Two (damages - TILA), Three (RESPA), Four (FDCPA), Six (Fraud), Seven (Unconscionability), and Eleven (VCPA) remain.[17]   The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for all parties.

IT IS SO ORDERED.

/s/

Rebecca Beach Smith
United States District Judge

Rebecca Beach Smith
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

August 3 , 2007

---

[17] As previously noted, these counts remain pending against all defendants, except for Count Four, which was only filed against EHC, Standen, AHQ, and LandPartners.  See supra note 1.

29